**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**UNITED STATES OF AMERICA**

**CASE NO. 5:18-CR-00026-9**

**vs.**

**WILLIAM EARLEY, D.O.**

## O R D E R

On August 13, 2018 the parties returned for a follow up hearing concerning the Notice of Potential Conflict of Interest filed by the United States on July 24, 2018. (ECF No. 334) Appearing on behalf of Defendant was Wesley Page, Esq., and representing Mr. Page's law firm, Flaherty Sensabaugh Bonasso, PLLC (hereinafter "Flaherty") was Jeffrey Wakefield, Esq., General Counsel, and Salem Smith, Esq., also of Flaherty and former counsel to Drs. Chad and Samia Turner. Appearing on behalf of the United States were Steven Lowe, Esq. and Monica Coleman, Esq.

### Background

This matter involves one of twelve defendants who were indicted collectively in February 2018 on several felony violations of the Controlled Substances Act as employees and/or operators of the HOPE Clinic. Initially, Defendant Earley was indicted on nine counts. In March 2018, these twelve defendants were indicted for additional felony violations in a superseding indictment. Defendant Earley was indicted for an additional nine counts. In June 2018, these twelve defendants were indicted on a second superseding indictment; again, Defendant Earley was indicted for an additional nine counts.

**Procedural History**

Mr. Page, on behalf of Defendant Earley, filed his Notice of Appearance on March 1, 2018.[1] (ECF No. 55) On March 5, 2018, the undersigned ordered that Defendant Earley's prior counsel, John Anderson be terminated from his appointment and representation of Defendant Earley. (ECF No. 56)

On March 6, 2018, the District Court ordered that specified grand jury materials be disclosed to counsel for all Defendants, including Defendant Earley. (ECF No. 60) On March 15, 2018, the United States filed a response to the Defendants' discovery requests and requested reciprocal discovery from Defendants. (ECF No. 159) On March 22 and 23, 2018, the United States filed supplemental responses to Defendants' discovery requests and requests for reciprocal discovery. (ECF Nos. 186, 189) As a result of the expansive discovery disclosed by the United States, Defendant Earley, by counsel Mr. Page, moved to continue the trial and pretrial hearings in this matter (ECF No. 192); that same day, March 23, 2018, the District Court granted the motion to continue. (ECF No. 193) On April 2, 2018, the United States filed its motion to continue the pretrial motions hearings as to all the Defendants (ECF No. 229); the undersigned granted the motion and rescheduled the pretrial motions hearings to July 11, 2018. (ECF No. 230) On April 3, 2018, the United States filed a third supplemental response to the Defendants' discovery requests and requests for reciprocal discovery. (ECF No. 233) On April 27, 2018 and May 18, 2018, the United States filed a fourth and fifth supplemental response to Defendants' discovery requests and requests for reciprocal discovery. (ECF Nos. 241, 242)

Though unrelated to discovery matters, on April 10, 2018, Defendant Earley, by counsel Mr. Page, filed his motion to modify the conditions of his bond, allowing him to prescribe

---

[1] That same day, the District Court ordered that specified grand jury materials relevant to these Defendants be disclosed to counsel for Defendants. (ECF No. 54)

2

controlled substances that were not Schedules I or II. (ECF No. 236) The United States filed its response in opposition (ECF No. 237); the undersigned granted Defendant Earley's motion and modified the conditions of his bond. (ECF No. 240)

On June 6, 2018, the District Court granted the motion to continue the trial as to all Defendants, rescheduling same for November 5, 2018 and the pretrial motions hearings before the undersigned for October 16, 2018. (ECF No. 251) On June 12, 2018, a second superseding indictment was filed wherein Defendant Earley was indicted on an additional nine counts. On June 14, 2018 and June 28, 2018, the District Court ordered that the grand jury materials be disclosed to counsel for all Defendants. (ECF Nos. 273, 295)

On July 24, 2018, the United States filed the ***Notice of Potential Conflict*** (ECF No. 334); on August 7, 2018, Flaherty Sensabaugh Bonasso PLLC by its General Counsel, Jeffrey M. Wakefield, Esq., filed its ***Response*** to same. (ECF No. 340) After rescheduling the hearing from August 8, 2018, the United States filed its ***Memorandum Regarding the Law and Procedures Applicable to Hearing Scheduled for August 13, 2018*** (ECF No. 352) to which Flaherty Sensabaugh Bonasso, PLLC by its General Counsel, Jeffrey M. Wakefield, Esq., filed it ***Response*** (ECF No. 353)

### The United States' Notice of Potential Conflict

The United States filed its ***Notice*** believing that a conflict of interest exists in defense counsel's representation of Defendant Earley pursuant to the West Virginia Rules of Professional Conduct 1.7 and 1.9. The United States asserts that on March 16, 2018 when it filed its response to Defendants' discovery requests, *supra*, this discovery contained two interview reports of Chad Turner, M.D. and Samia Ghareeb Turner, M.D. as well as Dr. Chad Turner's prior testimony. Both

Turners worked as physicians at the Charleston HOPE Clinic and are expected to testify at trial as witnesses for the United States.[2]

On June 14, 2018, counsel for the United States received a phone call from Mr. Salem Smith, an attorney with Flaherty Sensabaugh Bonasso PLLC, stating that he represented Dr. Chad Turner in a potential medical malpractice suit filed by a former patient of the HOPE Clinic. Mr. Smith was advised that Dr. Turner would be a witness at trial. Realizing Mr. Smith and Mr. Page worked at the same law firm, counsel for the United States sent both counsel an email on June 15, 2018 raising the issue of potential conflict; on June 18, 2018 Mr. Smith emailed a response stating his law firm performed the appropriate analysis and concluded that no conflict exists. On June 19, 2018 counsel for the United States emailed Mr. Smith and Mr. Page requesting further discussion of this matter. Accordingly, on June 21, 2018 counsel for the United States and Messrs. Smith, Page and Wakefield had a conference call; Mr. Wakefield indicated that there was no conflict and further, advised that Mr. Smith represented Dr. Samia Turner as well and had been able to resolve the case against both Turners so that they would be former clients by the time of Defendant Earley's trial.

Counsel for the United States indicated there was a conflict between Drs. Turner and Defendant Earley because Dr. Chad Turner's anticipated testimony directly inculpates Defendant Earley. Mr. Wakefield advised he would need additional time to examine the issue and later, on June 27, 2018, he informed the United States that his firm was analyzing the matter under Rule 1.9 and believed if Dr. Turner consented, then there would be no conflict. Counsel for the United States asserts further than on July 3, 2018 Mr. Wakefield advised that Dr. Chad Turner signed a waiver and Defendant Earley consented. Again, Mr. Wakefield indicated that there was no conflict.

---

[2] The United States stated during the hearings held in this matter that both Drs. Turner would offer testimony that implicates Defendant Earley for improperly dispensing opioids as alleged in the indictment.

However, in preparation for the trial, the United States spoke with the Turners after Mr. Smith's representation had ended and determined that neither Dr. Turner spoke with independent counsel prior to waiving the conflict and it was unclear if either understood the nature of the conflict or the consequences of waiving the conflict.

The United States contends that it has an interest in conflict-free counsel to protect the integrity of the prosecution.

### The Response of Flaherty Sensabaugh Bonasso, PLLC

On August 7, 2018, the law firm representing Defendant Earley filed its ***Response*** to the United States' Notice of Potential Conflict. (ECF No. 340) Flaherty insists there is no conflict between Mr. Page's representation of Defendant Earley and Mr. Smith's former representation of the Turners because the law firm no longer represented the Turners on June 28, 2018. Flaherty directs the Court to examine Rule 1.9 of the West Virginia Rules of Professional Conduct, which governs former clients: Flaherty obtained written consent from the Turners regarding the firm's representation of Defendant Earley. Further, there was no information obtained from the Turners during the firm's brief representation of them that would be disadvantageous to Defendant Earley.

Flaherty states that the Turners retained the firm on May 31, 2018 to represent them in connection with a Notice of Claim served by the Estate of Timothy Jason Lewis. This Claim involved a medical liability matter connected to the Turners' employment at the HOPE Clinic. Flaherty followed its standard conflict of interest procedures which included a search of the firm's database to see if there were any conflicts; Mr. Page advised Mr. Smith of Flaherty's representation of Defendant Earley arising out of his employment at the HOPE Clinic. Mr. Page and Mr. Smith discussed the possible concurrent representation and conferred with their clients which included the information produced by the United States during discovery. As a result, Flaherty concluded

concurrent representation would not violate Rule 1.7 of the West Virginia Rules of Professional Conduct. Regarding the concurrent representation, Flaherty obtained a written consent from the Turners and a verbal consent from Defendant Earley.

Flaherty states that shortly after undertaking representation of the Turners, the United States contacted Messrs. Page and Smith about the potential conflict. Mr. Smith reassured the United States that there was no conflict on June 18, 2018, however, the United States wanted another conference on the issue and invoked Comment 6 to Rule 1.7 concerning a conflict when a lawyer is required to cross examine a client who appears as a witness in a lawsuit involving another client where the testimony will be damaging to the client who is represented. Because Flaherty's representation of the Turners would soon end, Flaherty asserted that Rule 1.9 governing former clients would be applicable.

Nevertheless, in a subsequent telephone conference to reassure the United States that there was no conflict, Flaherty again stated that Rule 1.9 is applicable because the firm no longer represented the Turners and a written consent was obtained from them, which is consistent with that Rule. Further, Flaherty believed that Mr. Page would not cross examine either of the Turners unless or until Defendant Earley's trial. Because the Turners gave their written consent[3] that Flaherty may continue its representation of Defendant Earley, no conflict of interest exists.

### The August 8, 2018 Hearing

The undersigned held a hearing on this issue on August 8, 2018, however, Defendant Earley was not present at the hearing and it was agreed upon by the parties that it would be more appropriate to argue this issue with Defendant Earley present. It also became clear during the hearing that the parties disputed whether Rule 1.7 or 1.9 of the West Virginia Rules of Professional

---

[3] Flaherty provided the written consent to the Court for *in camera* review, discussed *infra*.

Conduct apply in this case. The other main dispute concerned which party had the burden of proving the Turners gave informed consent when they waived the conflict. To address the issue as to whether the Turners gave informed consent, the United States agreed to subpoena them for the follow up hearing.[4]

### The United States Position Regarding Applicable Law and Rule

Following the August 8 hearing, the United States filed its ***Memorandum Regarding the Law and Procedures Applicable to the Hearing Scheduled for August 13, 2018***. (ECF No. 352) The United States concedes that a defendant has a right to counsel of his choice pursuant to the Sixth Amendment, however, the choice of counsel is not absolute, and the presumption of this choice can be overcome by demonstration of serious potential for conflict. Wheat v. United States, 486 U.S. 153, 159 (1988). The United States directs the Court's attention to Hoffman v. Leeke, 903 F.2d 280, 288 (4th Cir. 1990) where disqualification was mandated because counsel previously represented a person who would be the state's star witness against the defendant.

The United States contends that Rule 1.7 applies: the attorney-client relationship is assessed at the time the conflict arises, not at the time the motion to disqualify is presented to court. See El Camino Resources, Ltd. v. Huntington National Bank, 623 F.Supp.2d 863, 878 (W.D. Mich. 2007) Mr. Page of Flaherty began representing Defendant Earley on March 1, 2018 and continues to do so. Mr. Smith of Flaherty began representing the Turners on May 31, 2018 and ceased representing the Turners on June 28, 2018.

The United States asserts that Flaherty has the burden of proving the Turners gave informed consent to their waiver since Flaherty created the conflict by its dual representation of Defendant Earley and the Turners although Flaherty was put on notice that the Turners would be witnesses

---

[4] Because both Turners had patients scheduled for August 13, the United States had only Dr. Chad Turner appear for the follow up hearing.

for the United States in its prosecution of Defendant Earley. The United States requested the Court interview the Turners *ex parte* and *in camera* to avoid forcing a waiver of the attorney-client privilege and also to avoid being examined by their former attorneys.

### The Flaherty Response to the United States' Memorandum

On August 10, 2010, Flaherty filed its ***Response***. (ECF No. 353) Flaherty disputes that it has the burden of showing informed consent with the conflict issue; because the United States essentially seeks its disqualification, then it bears the burden. Further, Flaherty submitted for *in camera* review that it took the appropriate steps to address the conflict issue.

Flaherty also argues that the United States' reliance on the caselaw concerning the burden of proof is misplaced: first, those cases recognized that the movant always carries the burden of proof on a motion to disqualify counsel; second, a former or current client was moving to disqualify the attorney due to conflict; and third, those were civil cases, not criminal proceedings, so the Sixth Amendment right to counsel of choice did not apply.

Flaherty contends that the United States has a heavy burden to establish that an actual or potential conflict exists, and further, that the United States must show that any conflict was adequately addressed under the Rules of Professional Conduct and finally, the United States must demonstrate that such a drastic sanction of disqualification is warranted.

Flaherty argues Rule 1.7 does not apply, as there was no conflict of interest at the time Flaherty represented Defendant Earley and the Turners. The discovery provided by the United States, which included grand jury testimony and investigative reports concerning the Turners did not indicate that the Turners specifically addressed Defendant Earley. Because there was no direct adversity between Defendant Earley and the Turners, there was no material limitation by Flaherty to concurrently represent these clients. Flaherty asserts that only a potential conflict may arise at

some future time if Mr. Page would have to cross-examine the Turners. Flaherty states that at the time the United States raised the issue of the potential conflict, it was known that Flaherty's representation of the Turners would end soon. At the time the United States filed its Notice of Potential Conflict, Flaherty ceased representing the Turners and they had given written consent that Flaherty could continue to represent Defendant Earley. Therefore, Rule 1.9 governs because the Turners were and are former clients.

Flaherty also argues that the brief and limited representation of the Turners was not a ruse to terminate the attorney-client relationship in favor of Defendant Earley but was limited to convince a plaintiff's attorney not to name them in a lawsuit, and that this was known to the United States prior to the assertion of a conflict. Flaherty took no steps to eliminate any purported conflict because there was none during the concurrent representation. Further, despite the United States' insistence that Rule 1.7 applies, Comment 4 to Rule 1.7 provides that a lawyer may continue to represent a client whom a former client may be adverse if the lawyer is able to comply with his duties owed to the former client and adequately represent the current client in light of those duties. Comment 4 even references Rule 1.9 for determining if continued representation is appropriate. Regardless, any conflict under Rule 1.7 was resolved by the Turners' written consent and by Defendant Earley's verbal consent to Flaherty's continued representation of Defendant Earley.

With respect to the timing of when informed consent was obtained by the Turners, Flaherty points out that Rule 1.7 recognizes that such consent may not necessarily be obtained from the outset of the attorney-client relationship, and that Comment 20 provides that written confirmation of consent may be obtained within a reasonable time thereafter; verbal consent to the concurrent representation was obtained from all three clients at the time the Turners retained Flaherty. Once

the conflict issue was raised by the United States, Flaherty also took the appropriate steps to comply with Rule 1.9, as the representation of the Turners was to conclude soon.

The United States cannot carry its heavy burden to justify Flaherty's disqualification, and further, has injected itself into a matter that impairs Defendant Earley's Sixth Amendment right to be represented by counsel of his choice. There was no actual conflict at the time of the concurrent representation and no such conflict exists unless and until the Turners testify against Defendant Earley at trial and counsel is required to cross examine them. Nevertheless, Flaherty appropriately addressed that potential conflict under Rule 1.9 by obtaining the Turners' informed consent in writing to Flaherty's continued representation of Defendant Earley. Because there has been no ethical violation warranting Flaherty's disqualification and that disqualification "should be a measure of last resort", Flaherty requests the United States' motion for disqualified be denied. In re Grand Jury Proceedings, 859 F.2d 1021, 1025 (1st Cir. 1988) (quoting United States v. Diozzi, 807 F.2d 10, 12 (1st Cir. 1986)).

### The August 13, 2018 Hearing

Counsel for the parties and entities appeared as stated *supra*. Defendant Earley appeared in person and by counsel, Mr. Page, and Dr. Chad Turner appeared. Counsel reiterated their arguments from the previous hearing and as provided in their respective pleadings.

At the onset of the hearing, some preliminary matters were raised as to how to proceed. For starters, the undersigned announced to the parties that because Defendant Earley stands accused of serious offenses and that his freedom is at risk, taking an *in camera* interview of Dr. Chad Turner in order to decide whether Defendant Earley's chosen counsel would be disqualified was not appropriate. The undersigned announced that it was preferable to proceed on the record and in Defendant Earley's presence. In addition, the Court announced that the burden of proof is

not the real issue, but that the fact that Defendant Earley has an appealable issue as to whether he had effective competent counsel free of conflicts should he be convicted, specifically because Flaherty also represented Drs. Chad and Samia Turner who are to give adverse testimony against him.[5]

Flaherty and the United States agreed that with regard to the conflict of interest, the United States has the burden of proof, and must demonstrate that the Turners' testimonies are adverse to Defendant Earley. However, once the United States demonstrates the adversity, the parties agreed that the burden shifts to Flaherty which must demonstrate it had informed consent because the Rules of Professional Conduct provide that the law firm must obtain informed consent prior to representation.

Because of the parties' disputes concerning whether Rule 1.7 or Rule 1.9 applies, and by implication, **when** informed consent must be obtained by Flaherty, the Court's Exhibit #1 was disclosed to the United States.[6] [7]

---

[5] At this point during the hearing, General Counsel for Flaherty requested that Dr. Chad Turner be sequestered, to which the United States had no objection.

[6] This Exhibit is a copy of the June 27, 2018 letter on Flaherty letterhead from Mr. Smith to Dr. Chad and Samia Turner advising of the conclusion of the firm's representation as of June 28, 2018, the applicability of Rule 1.9, and the written consent of the Turners to Flaherty's continued representation of Defendant Earley in the criminal matter. The Turners executed the consent on June 28, 2018. Although the Exhibit is an attorney-client communication, General Counsel for Flaherty conceded that it was not entirely privileged.

[7] Counsel for the United States mentioned that another co-Defendant in this proceeding, Dr. Paul W. Burke, had previously been represented by Flaherty as was told to him by Mr. George Cosenza, criminal counsel for Dr. Burke. Flaherty was not prepared to make any representation to the Court of any prior representation of Dr. Burke at the time of the hearing. The Court advised Flaherty of the continuing obligation to disclose to the Court any conflicts: On August 14, 2018, Flaherty filed its **_Supplemental Response_** to the United States' Memorandum (ECF No. 358) affirming that the firm had previously represented Dr. Burke from April 25, 2017 through September 23, 2017 due to a Notice of Claim filed against Dr. Burke and other medical providers that is not the same or substantially related to anything involving the HOPE Clinic or the substance of this indictment. Flaherty asserts that Rule 1.9 applies to the situation involving Dr. Burke, therefore his written consent is not required. Flaherty further represents that Dr. Burke did contact the firm with respect to the Notice of Claim that was also served upon Drs. Turner, but that no attorney-client relationship was formed with respect to the allegations contained in that Notice of Claim. Flaherty represents to the Court that it will continue to review its former client records to determine if any of the co-Defendants in this indictment had been clients that would trigger Rule 1.9.

The United States then proffered the discovery disclosed to counsel for Defendant Earley in March and requested that same be filed under seal.[8] During the brief recitation of the discovery contents, the United States conceded that Drs. Chad Turner and Samia Turner do not explicitly state that Defendant Earley had been practicing medicine in a manner outside of acceptable standards, but the United States contended that their statements are adverse insofar as they allege that prior physicians working at the HOPE Clinic in Charleston ignored State auditors, prescribed short acting opiates, not titrating medications, accepted cash payments for prescriptions, and generally described that the prior physicians working at that Clinic practiced bad medicine, outside of the standard of care and further, such practices were not based on legitimate medical reasons, but based on supply and demand. The Turners described this Clinic as a pill mill. The United States asserted that this information put Flaherty on notice that the Turners will provide adverse testimony against their client, Defendant Earley, as one of the physicians who previously worked at the Clinic. The United States contends that instead of putting up a firewall, the lawyers at Flaherty discussed these matters among each other and did not obtain informed consent as the Rules require.

In response, Flaherty denied that this discovery revealed any conflict with its representation of Defendant Earley, and noted that the United States concedes that neither Dr. Chad Turner nor Dr. Samia Turner mentioned Defendant Earley specifically in the discovery provided.

The Court noted on the record that from the United States discovery disclosures that the Turners anticipated testimony was damaging to Defendant Earley and questioned whether Flaherty investigated what the Turners testimonies would be against Defendant Earley specifically. Flaherty could not respond without seeing if Dr. Chad Turner would waive the attorney-client privilege,

[8] The Court admitted Government Exhibits #1 through #4 and ordered that they be filed under seal given that they contained confidential patient information, investigation interviews as well as grand jury testimony.

and after a brief recess, Flaherty announced that it would not call either Dr. Chad Turner or Defendant Earley as witnesses and have them waive their attorney-client privileges.

Flaherty rested on the grounds that Rule 1.9 applied to this issue and that the United States did not demonstrate adversity between the Turners and Defendant Earley.

At the end of the hearing, the Court announced that Flaherty had a conflict at the time Flaherty took on the Turners as clients, and that the Turners' adversity against Defendant Earley was known to Flaherty beforehand. Instead of having the Turners execute the written informed consent, Flaherty should have had Defendant Earley sign the written consent based on the Turners' anticipated testimonies for the United States. Indeed, in response to the Court's question, Flaherty admitted it had no written consent from Defendant Earley.

## The Relevant Rules and Law

Rules of Professional Conduct, Rule 1.7 Conflict of Interest: Current Clients[9]

**(a)** Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**(b)** Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

**COMMENT**

---

[9] For the sake of simplicity, the Rules of Professional Conduct and the pertinent Comments are provided in their original form, although the undersigned has provided ***bolded italics*** to emphasize the language most applicable to the issues raised herein.

## General Principles

[1] Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests. For specific Rules regarding certain concurrent conflicts of interest, see Rule 1.8. For former client conflicts of interest, see Rule 1.9. For conflicts of interest involving prospective clients, see Rule 1.18. For definitions of "informed consent" and "confirmed in writing," see Rule 1.0(e) and (b).

[2] *Resolution of a conflict of interest problem under this Rule requires the lawyer to: 1) clearly identify the client or clients; 2) determine whether a conflict of interest exists; 3) decide whether the representation may be undertaken despite the existence of a conflict, i.e., whether the conflict is consentable; and 4) if so, consult with the clients affected under paragraph (a) and obtain their informed consent, confirmed in writing.* The clients affected under paragraph (a) include both of the clients referred to in paragraph (a)(1) and the one or more clients whose representation might be materially limited under paragraph (a)(2).

[3] *A conflict of interest may exist before representation is undertaken, in which event the representation must be declined, unless the lawyer obtains the informed consent of each client under the conditions of paragraph (b). To determine whether a conflict of interest exists, a lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues involved.* See also Comment to Rule 5.1. Ignorance caused by a failure to institute such procedures will not excuse a lawyer's violation of this Rule. As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.

[4] If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b). See Rule 1.16. Where more than one client is involved, whether the lawyer may continue to represent any of the clients is determined both by the lawyer's ability to comply with duties owed to the former client and by the lawyers's ability to represent adequately the remaining client or clients, given the lawyer's duties to the former client. See Rule 1.9. See also Comments [5] and [29].

## Prohibited Representations

[14] Ordinarily, clients may consent to representation notwithstanding a conflict. However, as indicated in paragraph (b), *some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the lawyer is*

*representing more than one client, the question of consentability must be resolved as to each client.*

[15] *Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by a conflict of interest.* Thus, under paragraph (b)(1), *representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation.* See Rule 1.1 (competence) and Rule 1.3 (diligence).

[16] Paragraph (b)(2) describes conflicts that are nonconsentable because the representation is prohibited by applicable law. For example, in some states substantive law provides that the same lawyer may not represent more than one defendant in a capital case, even with the consent of the clients, and under federal criminal statutes certain representations by a former government lawyer are prohibited, despite the informed consent of the former client. In addition, decisional law in some states limits the ability of a governmental client, such as a municipality, to consent to a conflict of interest.

[17] *Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding.*

## Informed Consent

[18] *Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client.* See Rule 1.0(e) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved. See Comments [30] and [31] (effect of common representation on confidentiality).

[19] Under some circumstances it may be impossible to make the disclosure necessary to obtain consent. *For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent. In some cases the alternative to common representation can be that each party may have to obtain separate representation with the possibility of incurring additional costs.* These costs, along with the benefits of securing separate representation, are factors that may be considered by

the affected client in determining whether common representation is in the client's interests.

Rules of Professional Conduct, Rule 1.9 Duties to Former Clients

**(a)** A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

**(b)** A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client,
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer has acquired information protected by Rule 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

**(c)** A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

**COMMENT**

[1] After termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest and thus may not represent another client except in conformity with this Rule. Under this Rule, for example, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction. Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent. See Comment [9]. Current and former government lawyers must comply with this Rule to the extent required by Rule 1.11.

[2] The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse

interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdictions. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

[3] Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

The right of a defendant to be represented by counsel of his or her choosing is contemplated by the Sixth Amendment. <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988) Nevertheless, this right is not absolute:

> The District Court must recognize a presumption in favor of [defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of

actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

Id.

Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationship between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand.

Id. at 162-163.

In United States v. Williams, 81 F.3d 1321, 1324 (4th Cir. 1996) the Fourth Circuit stated

We have rigorously applied Wheat's rational – which emphasizes the primacy of the court's concern for integrity of the process – to the point of reversing for abuse of discretion a district court's refusal, because of party waiver, to disqualify even though the conflict was obvious and palpable.

## Analysis

This Court must determine whether a conflict exists with Mr. Page's continued representation of Defendant Earley in this criminal proceeding when Mr. Page and his law firm, Flaherty, had been placed on notice that Dr. Chad Turner and Dr. Samia Turner, former clients of Flaherty as well as former employees of the HOPE Clinic in Charleston, will be called to testify for the United States that the physicians who previously worked at the Clinic, including Defendant Earley, not only provided substandard medical care to their patients, but also and more importantly, engaged in misconduct that resulted in three separate indictments involving numerous violations of several federal statutes.

On May 31, 2018, when Mr. Smith of the Flaherty law firm decided to represent Drs. Chad and Samia Turner, a conflict occurred with Flaherty's current client, Defendant Earley. There is

no dispute that Mr. Page received information from the United States as early as March 2018 that clearly indicated Drs. Chad and Samia Turner would be witnesses on behalf of the United States and were to give adverse testimony against his client Defendant Earley. Flaherty emphasizes that Drs. Turner are former clients and that Rule 1.9 of the Rules of Professional Conduct is applicable. The undersigned is not inclined to agree with this: The fact remains that Defendant Earley was a Flaherty client *first* – Rule 1.7(b)(4) required not only that Drs. Turner have given "informed consent, in writing", but also ***Defendant Earley's*** "informed consent, in writing." Indeed, there is no "informed consent, in writing" from Defendant Earley.

This written informed consent should have been obtained once Flaherty decided to represent the Turners because Flaherty was put on notice, via Mr. Page in March 2018, that they were going to give adverse testimony against Defendant Earley. Per Rule 1.7(a)(2), there was a significant risk that the representation of one or more of these clients, particularly Defendant Earley, will be materially limited by the lawyer's responsibilities to the other client, in this case the Turners, especially when considering whether Mr. Page will have to cross examine the Turners in performing due diligence for his client, Defendant Earley, in order to impeach their testimony and/or credibility at his trial. Given the anticipated testimonies provided by the United States' discovery disclosures, this potential conflict can be described as "nonconsentable" as espoused in Comment 17 to Rule 1.7, *supra*.[10] Nevertheless, this Court has no evidence before it that could substantiate any claim that Defendant Earley consented to Flaherty's representation of the Turners.

---

[10] The undersigned concludes that the conflict in this matter is nonconsentable because there is no question that, in order to effectively represent Defendant Earley in this matter at trial, and knowing the content of Drs. Turners' testimony, Defendant Earley's counsel will have to vigorously impeach the testimony of both Dr. Chad Turner and Dr. Samia Turner which will most likely entail attempting to question their credibility. It is hard to fathom that either Drs. Turner would have agreed to a consent allowing their own attorneys to impeach their testimony by attacking their credibility. Furthermore, it is equally hard to fathom that Defendant Earley would have agreed to consent to his attorney representing the Turners with the understanding that he would not be able to vigorously impeach the Turners and their credibility. In other words, with Defendant Earley's freedom on the line, it is likely that any cross-examination of witnesses, including the Turners, would entail impeaching the credibility of those witnesses. It is also

Although the Turners became former clients as of June 28, 2018, they were concurrent clients with Defendant Earley since May 31, 2018. When reading Rule 1.9(a), *supra*, a lawyer who has formerly represented a client, in this case, the Turners, shall not "thereafter represent another person", here, Defendant Earley. This implies taking representation of Defendant Earley *after* Flaherty represented the Turners, not before, which is the case here. Examining the attorney-client relationship between Flaherty and the Turners and Defendant Earley under this Rule requires mental gymnastics that should be unnecessary in a criminal case of this magnitude.[11]

The Sixth Amendment right to counsel includes the right to effective assistance free of conflicts of interest. See, e.g., Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). A conflict of interest was demonstrated in this case, and the question as to whether it would adversely affect Mr. Page's performance in cross examining the Turners may be speculative, however, it is notable that Flaherty declined to call its former client[12], Dr. Chad Turner, and its current client, Defendant Earley, to the witness stand in order for this Court to determine that either client had provided *informed* consent to the dual/former representation.

> Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of *presumed prejudice* for conflicts of interest.

See Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). In this case, the presumption of prejudice due to the conflict has not been overcome. The Court's

---

unimaginable that either client would have consented had either of them been told in full the limitations or expectations of what the dual representation would entail.

[11] It is not an understatement to say, when considering the seriousness of the charges pending against Defendant Earley, his age and the length of a prison sentence that could be imposed upon him should he be found guilty, that his life is literally on the line. Because of that, he should never have been put in a position where there is even a remote chance that his counsel would be hamstrung in providing the most vigorous defense possible.

[12] In many ways, the reluctance of Mr. Wakefield to call Dr. Turner to give testimony in this matter, belies the very problem of joint presentation that should never have been undertaken in the beginning. If Mr. Wakefield was uncomfortable calling Dr. Turner to give testimony at the August 13 hearing, is it difficult fathom that it will be equally, if not more, difficult to attack Dr. Turner's credibility at Dr. Earley's criminal trial?

independent interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them"[13] coupled with the United States' obligation to protect the integrity of this prosecution[14], and only after solemn and serious consideration of the particular circumstances herein does the undersigned **FIND** that Mr. Wesley Page, Esq. and the law firm of Flaherty Sensabaugh Bonasso, PLLC are **DISQUALIFIED** from further representation of Defendant Earley in this criminal proceeding.

Defendant Earley deserves counsel in which there is no question that his counsel is able to provide a complete, vigorous defense. Unfortunately, due to the actions of the Flaherty Sensabaugh Bonasso, PLLC in taking on the representation of Drs. Turner with full knowledge of the disclosures made by the United States that made it clear that Drs. Turner were critical, adverse witnesses against Defendant Earley, Defendant Earley does not have the assurance that his attorneys can provide him the defense he deserves.[15] The undersigned cannot overstate the gravity of the decision that was made by Flaherty Sensabaugh Bonasso, PLLC in taking on the representation of Drs. Turner knowing what was known by Wesley Page, Esq. regarding the evidence disclosed by the United States. Because of this action, the undersigned has no other choice but to deny Defendant Earley the choice of his counsel to represent him in this matter.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on the non-dispositive motions may be contested by filing, within 14 days, objections to this

---

[13] See Wheat, 486 U.S. at 159, 108 S.Ct. at 1697.

[14] See United States v. Lara Alvarez, 96 Fed.App'x 166, 170 (4th Cir. 2004); United States v. Tatum, 943 F.2d 370, 379-380 (4th Cir. 1991); United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996).

[15] The undersigned finds it hard to fathom how a different conclusion was made that both Drs. Turner were not adverse to Defendant Earley. When reviewing the sealed exhibits that were disclosed to the parties in this matter [ECF Nos. 356, 356-1, 356-2 and 356-3], which are the discovery disclosures produced by the United States to Defendant Earley, there can be no question that Dr. Chad Turner and Dr. Samia Turner, were both adverse to Defendant Earley and any concurrent representation would be nonconsentable. It absolutely shocks the conscience of the undersigned that any other conclusion was reached. The decision to take on the representation of Drs. Turner should never had been made in the first instance. In the opinion of the undersigned, it was not a "close call".

Order with District Judge Irene C. Berger. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to send a copy of this Order to all counsel of record.

**ENTER: August 15, 2018**.

Omar J. Aboulhosn
United States Magistrate Judge