# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                               CRIMINAL ACTION NO. 5:18-cr-00026-09

WILLIAM EARLEY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Order* (Document 359) entered by Magistrate Judge Omar J. Aboulhosn on August 15, 2018, the *Objections of Defendant William Earley, D.O. [to] Magistrate Judge Aboulhosn's Order Disqualifying Counsel* (Document 365), the *United States Response to Defendant Earley's Objections to Order Disqualifying Counsel* (Document 367), and the *Reply to Government's Response to Defendant Earley's Objections to Order Disqualifying Counsel* (Document 370). In addition, the Court has reviewed the underlying briefing filed prior to the Magistrate Judge's order, as well as the *Additional Response of Flaherty Sensabaugh Bonasso, PLLC Regarding Prior Representation of Certain Co-Defendants* (Document 363), disclosing the results of additional review of client records. The Court has also reviewed the *United States Response to Order Dated August 15, 2018* (Document 364), filed before the Defendant's objections, wherein the United States discusses additional and alternative legal grounds in support of the Magistrate Judge's ruling, and the Defendant's *Reply to Government's Response to Order Dated August 15, 2018* (Document 368). For the reasons stated herein, the Court finds that the

objections should be overruled, and that Wesley Page should be disqualified as counsel for the Defendant in this matter.

## FACTS AND PROCEDURAL HISTORY

The Defendant, William Earley, D.O., was indicted along with eleven other individuals in February 2018, with superseding indictments containing additional charges filed in March and June, 2018. The charges against Dr. Earley relate to the unlawful distribution of oxycodone through his role as a physician at the HOPE Clinic. Dr. Earley retained Wesley Page as counsel, and Mr. Page filed his notice of appearance on March 1, 2018. Mr. Page is an attorney with the law firm of Flaherty Sensabaugh Bonasso, PLLC (hereafter, Flaherty).

On July 24, 2018, the United States filed a notice of potential conflict of interest, explaining that another attorney at Flaherty had represented two doctors who were likely to be witnesses for the prosecution. Dr. Chad Turner and Dr. Samia Turner worked at HOPE Clinic, and reports of interviews with them were included in discovery materials the United States supplied to the Defendants. The United States anticipates that Drs. Turner will testify that Dr. Earley's practice and prescriptions of opioids were outside the standard of care. Attorney Salem Smith of Flaherty represented Drs. Turner in a potential medical malpractice suit filed by a former patient of the HOPE Clinic. Mr. Smith was retained on May 31, 2018. That potential malpractice case was resolved in the pre-litigation phases, and Mr. Smith's representation of the Turners ended on June 28, 2018.

On June 28, 2018, the Turners signed a memorandum/letter regarding "Informed Consent to Represent William Jeffrey Earley, D.O." (Sealed Ct. Ex. 1, Document 356-4.) The letter states: "Based on our conversations and my firm's analysis of this matter, we do not believe Dr.

Earley's interests in the criminal matter are materially adverse to yours or that any conflict of interest exists that would preclude my firm from continuing to represent Dr. Earley after our representation of both of you has concluded." (*Id*. at 1.) The letter quotes Rule 1.9 of the Rules of Professional Conduct, governing conflicts involving former clients. It then reiterates that Flaherty does not believe Dr. Earley's interests are materially adverse to the Turners' interests, and assures them that the firm "has not obtained any information relating to [Mr. Smith's] representation of [the Turners] that could later be used to [their] disadvantage in future litigation." (*Id.* at 2.) The letter states that Flaherty sees "no material limitation on our ability to continue to represent Dr. Earley or on our continued duties to you as a former client," and requests that they sign the form confirming their informed consent. (*Id.*) The letter then advises the Turners of their right to confer with separate counsel regarding the consent. The form signed by the Turners agrees that they consent to Mr. Page's representation of Dr. Early "and that such representation may be deemed to be materially adverse to my interests." (*Id.* at 4.)

The Magistrate Judge held hearings on the issue of the potential conflict on August 8 and August 13, 2018. Flaherty's general counsel, Jeffrey Wakefield, appeared, as did Mr. Page and Salem Smith, the attorney who had represented the Turners. The parties discussed the discovery materials disclosed regarding Drs. Turner, with Flaherty maintaining that the material does not include explicit statements by the Turners asserting that Dr. Earley practiced medicine outside the standard of care. The United States contended that the Turners' statements "are adverse insofar as they allege that prior physicians working at the HOPE Clinic in Charleston ignored State auditors, prescribed short acting opiates, not titrating medications, accepted cash payments for prescriptions, and generally described that prior physicians working at that Clinic practiced bad

medicine, outside the standard of care, and further, such practices were not based on legitimate medical reasons, but based on supply and demand." (Mag. Order at 12.) Flaherty noted that the material did not specifically mention Dr. Earley and declined to call either Dr. Turner or Dr. Earley to testify on the matter, which would have required a waiver of attorney-client privilege. In response to a question from Judge Aboulhosn, "Flaherty admitted it had no written consent from Defendant Earley." (*Id*. at 13.)

During the August 13, 2018 hearing, questions arose as to whether Flaherty had previously represented any co-Defendants. Flaherty submitted supplemental memoranda on August 14 and on August 29 disclosing additional relationships with individuals involved in this criminal case. (Documents 358 and 363.) Flaherty represented co-Defendant Dr. Paul Burke with respect to a Notice of Claim and Screening Certificate of Merit filed in anticipation of a medical malpractice suit, which Flaherty represents did not relate to HOPE Clinic. The representation began on or about April 25, 2017, and ended on or about September 23, 2017. Dr. Burke also contacted Flaherty regarding the same Notice of Claim at issue for Drs. Turner, and an attorney assisted Dr. Burke in identifying medical professional liability coverage. Flaherty does not believe an attorney-client relationship was formed during that interaction.

In addition, Flaherty disclosed that it had represented co-Defendant Dr. James Blume in three matters. An attorney at Flaherty represented Dr. Blume in a medical professional liability action in 2000, which Flaherty represents was unrelated to the HOPE Clinic. Another attorney at Flaherty[1] represented Dr. Blume in a medical professional liability action filed in 1998 and dismissed in 2001. That matter involved a foot injury and was unrelated to HOPE Clinic.

---

1 Attorney Fred B. Westfall, Jr., provided representation in this matter. Flaherty notes that Mr. Westfall is now the Chief of the Civil Division of the United States Attorney's Office for the Southern District of West Virginia.

Flaherty again represented Dr. Blume in a complaint filed before the West Virginia Board of Osteopathic Medicine in 2012. The matter was resolved with entry of a Consent Order dated November 28, 2012. Flaherty again represents that the matter was not the same or substantially related to the HOPE Clinic or the indictment.

Flaherty disclosed representation of co-Defendant Dr. Vernon R. Stanley in 2015, regarding a Business Associate Agreement unrelated to the HOPE Clinic. The firm also represented Dr. John H. Pellegrini "in connection with a series of civil actions or claims arising out of acts or omissions of Dr. Pellegrini during his employment at the HOPE Clinic which pre-dated the employment of Dr. Earley." (Def.'s Add.'l Resp. at 3, Document 363.) Dr. Pellegrini was charged in, and pled guilty to, a related Information in case number 5:18-cr-10. His plea includes a detailed stipulation of facts discussing the operation of the HOPE Clinic. However, Flaherty indicates that Dr. Pellegrini has medical problems that may prevent him from offering trial testimony. It states that it "would be prepared to take appropriate action to the extent Rule 1.9 of the Rules of Professional Conduct is deemed applicable" if it appears that Dr. Pellegrini will be an adverse witness against Dr. Earley. (*Id*. at 3–4.)

On August 15, 2018, the Magistrate Judge issued an order disqualifying Mr. Page and Flaherty from further representation of Dr. Earley based on the conflicts of interest involving the Turners. Dr. Earley filed a timely appeal of the Magistrate Judge's decision to this Court, and the matter is now ripe for review.

## STANDARD OF REVIEW

This issue was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). Both that provision and Rule 59(a) of the Federal Rules of Criminal Procedure provide that a

magistrate judge's ruling on fully referred, non-dispositive pretrial matters may be appealed to the district judge. The district court must consider the objections and "modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). However, the Court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of the opinion to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

The Court will apply the clearly erroneous standard to the information ruled upon by the Magistrate Judge. Because Flaherty identified additional factual information regarding its prior representations of individuals involved in this criminal proceeding after the Magistrate Judge issued his order, the Court will review and analyze that information de novo.

## DISCUSSION

The Magistrate Judge found that Flaherty had a conflict at the time it accepted representation of the Turners, some months into Mr. Page's representation of Dr. Earley and subsequent to the United States' disclosures that identified the Turners as adverse witnesses. He found the consent signed by the Turners insufficient to remedy the conflict because the conflict is non-consentable, given the likely need to impeach the Turners at trial, and because there is no evidence that Dr. Earley consented to the conflict.

Dr. Earley[2] argues that the conflict(s) should be evaluated under Rule 1.9, addressing conflicts with former clients, rather than Rule 1.7, addressing concurrent conflicts of interest.

---

2 The arguments are presented on behalf of Dr. Earley. Because Flaherty and Mr. Page did not produce any written or verbal testimony or evidence from Dr. Earley explaining his understanding of the issues herein, as well as the nature of this matter exploring attorney conflicts, it is difficult for the Court to evaluate the extent to which the arguments represent Dr. Earley's informed position, as opposed to Flaherty's position. The Court assumes, however, that Mr. Page and Flaherty remain Dr. Earley's choice of counsel under the Sixth Amendment and that he concurs in the arguments presented.

6

Although Flaherty accepted the Turners as clients and represented them while also representing Dr. Earley, that representation has now ended, and the Turners would be former clients during any cross examination. Dr. Earley relies heavily on *United States v. White Buck Coal Co.*, wherein Judge Copenhaver permitted a law firm to continue representing a coal company in a criminal prosecution, despite an attorney's early concurrent representation of both the company and an employee who pled guilty to related charges and became a cooperating witness. *United States v. White Buck Coal Co.*, No. 2:06-00114, 2007 WL 130322, at *10 (S.D.W. Va. Jan. 16, 2007) (Copenhaver, J.). Dr. Earley argues that Judge Copenhaver's analysis is applicable here. He further argues that Drs. Turner have provided informed consent to waive the conflict, and stresses that "there is no friction between Flaherty's duty to safeguard its privileged communications with Drs. Turner and its duty to effectively cross examine them at Dr. Earley's trial, as there are no privileged communications that could be used to Drs. Turners' detriment." (Obj. at 5., Document 365.)

The United States argues that Flaherty has not shown informed consent by the Turners because such consent should have been obtained at the beginning of Flaherty's representation of both the Turners and Dr. Earley, and because the informed consent letter assures the Turners that their interests and those of Dr. Earley are not materially adverse. The United States further notes that Mr. Page will be constrained in his ability to cross-examine both the Turners and Dr. Burke. The United States distinguishes *White Buck*, arguing that there may be evidence related to the potential medical malpractice case against the Turners that would be useful on cross-examination. It stresses that Flaherty's confidence that it will not be necessary to vigorously impeach the

7

credibility of the Turners on cross-examination exemplifies the risks involved in permitting the conflicted representation.

The Sixth Amendment of the United States Constitution establishes specific rights to protect those accused of crimes, including the right "to have the assistance of counsel for [their] defense." U.S. Const. amend. VI. The United States Supreme Court has held that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (holding that erroneous deprivation of counsel of choice establishes a violation of the Sixth Amendment, regardless of whether the trial with substitute counsel was fair.)

However, the Sixth Amendment right to one's choice of counsel "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Importantly, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.*; *see also Gonzalez-Lopez*, 548 U.S. at 156, n. 3 (explaining that the discussion of a fair trial in *Wheat* means "that the right to counsel of choice may be limited by the need for a fair trial, [not] that the right does not exist unless its denial renders the trial unfair"). In concluding that waivers by multiple defendants represented by the same attorney would not necessarily cure the issues raised by the conflict, the Supreme Court explained that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. Thus, courts may consider "the institutional interest in the rendition of just verdicts in

criminal cases" as well as the interests of a specific criminal defendant in determining whether to permit multiple representation. *Id*.

The Court held that "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id*. at 163. The Fourth Circuit has likewise held that a district court is to "exercise its own independent judgment as to whether the proceedings are likely to have the requisite integrity if a particular lawyer is allowed to represent a party." *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996). The court considered the potential for appointment of auxiliary counsel to handle cross-examination of witnesses an attorney has represented and found that "[w]hile allowing such a procedure may have been within the court's discretion, declining to use it cannot be held an abuse of discretion." *Id*. at 1325 (noting that auxiliary counsel would presumably learn about the case primarily from the conflicted counsel, leaving some concern regarding the effectiveness of such a procedure, and that the conflicted counsel would remain at counsel table as lead counsel).

Judge Copenhaver issued an opinion addressing a motion to disqualify conflicted counsel in 2007, as cited by the Defendant. *United States v. White Buck Coal Co.*, No. 2:06-00114, 2007 WL 130322, at *13 (S.D.W. Va. Jan. 16, 2007). There, an inspector issued a citation to a mine foreman for failure to conduct a proper pre-shift examination, and the foreman informed the investigators that his supervisors instructed him to perform his duties unlawfully. The company's attorney met with the foreman and supervisory employees, and undertook the representation of the foreman, his supervisor, and the company. The foreman was later criminally prosecuted, obtained

9

his own attorney, pled guilty, and cooperated as a witness in a prosecution of the company. The company attorney who represented the foreman during the initial investigation joined the firm of Spilman, Thomas, & Battle, and the company ultimately retained that firm for its defense of the criminal charges. Judge Copenhaver concisely summarized the holdings of *Wheat*, explaining that "the court must [first] ascertain whether the conflict will interfere with the proper functioning of the adversarial process, namely, whether counsel's ethical dilemma robs the client of a constitutionally effective advocate. Second, the court must ascertain whether allowing conflicted counsel to proceed will cause observers to question the fairness or integrity of the proceeding." *Id.* at *13. Following a thorough hearing with careful questioning of the involved parties, Judge Copenhaver concluded there were no privileged communications to protect, and that use of auxiliary counsel would be sufficient to resolve the conflict. *Id*. at 13–15.

This Court referred the notice of a potential conflict to Magistrate Judge Aboulhosn, and his decision is reviewable to the extent it is contrary to law or clearly erroneous. The Supreme Court and the Fourth Circuit have found that district courts (or magistrate courts acting under an order of reference) enjoy considerable discretion in resolving questions of attorney disqualification as a result of conflicts of interest. The Court finds that the Magistrate Judge's order was not contrary to law or clearly erroneous. The facts are not in dispute. The Defendant contends that the Magistrate Judge erred by applying Rule 1.7 of the Rules of Professional Conduct, governing conflicts of interest between current conflicts, rather than Rule 1.9, governing conflicts with past clients. As the Magistrate Judge explained, the conflict arose when Flaherty chose to represent the Turners in May 2018, some months after the firm's representation of Dr. Earley began and after the United States had disclosed discovery material revealing that the Turners would be

adverse witnesses. The Court cannot find that it was an error of law to apply the rule governing concurrent conflicts under the circumstances.[3]

Nor was it error to find the conflict non-consentable,[4] given the likely need for vigorous cross-examination of the Turners as former clients. Although Flaherty insists that it may not be necessary to impeach the Turners, and that it gained no relevant information during the course of its representation, the Court is unconvinced. This case stands somewhat apart from some of the precedent in that Flaherty's conflicts arise from prior civil representation of witnesses and co-defendants, rather than from multiple representation of co-defendants. However, because Dr. Earley and the other physician defendants are accused of distributing controlled substances by prescribing outside the bounds of medicine and not for a legitimate medical purpose, an element of which is the violation of the standard of care, past civil suits related to the medical practices of the co-defendants and witnesses may well be relevant material for impeachment, cross-examination, or other aspects of the defense.

The Court finds the Defendant's reliance on Judge Copenhaver's opinion in *White Buck* to be unavailing. As an initial matter, opinions from other courts within the district are persuasive, but not binding authority. Here, the binding authority provides district courts extensive discretion in handling matters of this nature. Although the facts in *White Buck* are somewhat dissimilar to those present herein, particularly in that the Court is not convinced that Flaherty has no confidential information that an unconflicted attorney would utilize in a vigorous cross-examination, district

---

[3] As discussed below, disqualification would be proper regardless of which standard is applied given the nature and extent of the conflicts, including conflicts that clearly relate to prior clients.

[4] Further, there is no evidence to support effective informed consent by Dr. Earley, and the consent form signed by Drs. Turner is sorely lacking. It repeatedly advises them that their interests are not adverse to those of Dr. Earley and that there is no material limitation to Flaherty's ability to comply with its duties to the Turners and Dr. Earley. It is not at all clear that the form would have informed the Turners that they may be subject to attacks on their credibility by their former attorneys during cross-examination.

judges may exercise their discretion to reach different results under similar facts. For reasons similar to those outlined by the Fourth Circuit in *Williams*, this Court would not be inclined to accept use of an auxiliary attorney for cross-examination as an alternative to disqualifying conflicted counsel.

Finally, any doubt about the result reached by the Magistrate Judge is eliminated by the additional conflicts revealed by Flaherty after the issuance of the order. In addition to the Turners, who are potential adverse witnesses, Flaherty has represented three co-defendants, including two on matters involving medical professional liability and/or complaints before the licensing board. One of those co-defendants, Dr. Blume, is described in the indictment as the owner of the HOPE Clinics, responsible for contracting with physicians. The Court is not aware of the evidence in either this case or the details of Flaherty's prior representation, but the Court's experience with cases of this nature suggests that higher-level defendants may be described by co-defendants as the source and driver of any criminal conduct. This conflict therefore risks jeopardizing Dr. Earley's ability to mount a vigorous and effective defense.

More egregiously, Flaherty represented Dr. Pelligrini, who has pled guilty to a related Information case and agreed to cooperate with the United States. Its representation included civil claims related to Dr. Pelligrini's conduct at the HOPE Clinic. Although Flaherty indicates that Dr. Pelligrini's ability to testify may be impacted by a medical problem, he is clearly a potential adverse witness whose credibility may be at stake. The details of civil suits against him may well be relevant to the credibility of his testimony. As with the other potential witnesses, an attorney from Flaherty would be unable to ethically conduct the type of cross-examination that may be appropriate, given the firm's prior representation of Dr. Pelligrini.

The Court must evaluate the risk of permitting Flaherty's representation of Dr. Earley in advance of trial in an effort to ensure that Dr. Earley receives a fair trial without compromising the ethical standards of the legal profession or generating an appearance of unfairness to observers. Flaherty has represented three of Dr. Earley's co-defendants, a separately-charged cooperating witness, and two former HOPE Clinic employees who anticipate offering adverse testimony. If this could have been considered a close call when the Magistrate Judge evaluated the conflict related to the Turners, it cannot be considered a close call after the additional disclosures of potential conflicts. Accordingly, the Court finds that the Defendant's objections must be overruled, and the Magistrate's order disqualifying Wesley Page and Flaherty must be upheld.

The Court does not make the decision to disqualify lightly. Dr. Earley is entitled to retain the counsel of his choice, and the Court is cognizant of the tension between protecting his Sixth Amendment right to choice of counsel and protecting his due process right to a fair trial, as well as the integrity of the justice system. Interfering in the relationship between a criminal defendant and his chosen attorney is not an act the Court relishes. However, counsel should have performed a conflicts check before accepting representation, and declined when records revealed the type of prior representations that Flaherty has now disclosed. Law firms must be leery of accepting new civil clients who have been disclosed as adverse witnesses against existing criminal clients. Therefore, the Court finds that disqualification is required in this instance to guarantee effective representation of Dr. Earley and to insure the requisite legal and ethical integrity of the proceedings.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Objections of Defendant William Earley, D.O. [to] Magistrate Judge Aboulhosn's Order Disqualifying Counsel* (Document 365) be **OVERRULED** and that Magistrate Judge Aboulhosn's *Order* (Document 359) be **AFFIRMED**. The Court further **ORDERS** that Wesley Page and the law firm of Flaherty Sensabaugh Bonasso, PLLC, are **DISQUALIFIED** from further representation of Dr. Earley in this criminal proceeding and that the firm facilitate the transfer of the case to new counsel for Dr. Earley.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Omar J. Aboulhosn, to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: September 25, 2018

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA